We will now hear argument in Newman v. Garland. And Mr. Berkman, you've reserved two minutes, is that correct? That's correct. Okay, you may proceed. Good morning, and may it please the court, my name is Andrew Berkman, and I represent the petitioner, Everon Reed. Your Honors, Mr. Reed is a longtime U.S. lawful permanent resident. Can I ask you to put your mic a little closer to you? Is that better? Yes, thank you. Your Honors, Mr. Reed is a longtime U.S. lawful permanent resident of over 35 years. And in this case, the Board of Immigration Appeals committed a series of reversible errors in ordering that he be removed from the country. I'd like to make three points. First is that the board wrongfully affirmed the denial of Mr. Reed's motion to terminate proceedings as a consequence of his serious mental incompetency and disability. Mr. Reed suffers from a severe form of schizophrenia, which was proven by unrebutted expert testimony, showing that he was both entirely unable to consult with or assist with his counsel and defense, and that he would not be able to do so in the future. Second is that the board wrongfully denied relief under former INA Section 212C. And third, that the board wrongfully denied relief under the Convention Against Torture. Okay, so being that mental incompetence is not a static condition, how do we craft a rule for the agency that deals with the fact that a person could theoretically be competent or incompetent or more competent on some day or less competent on the other? Your Honors, it's not entirely clear that there has to be a rule that speaks specifically to competency in one circumstance versus another. In this case, you have a record showing that Mr. Reed was not competent at the time of his hearing before the Immigration Court, and that he would not be competent in the future, and there's unrebutted expert testimony in the record on that point. So you're taking the position that we would need to find that he would never be competent? The court doesn't need to find that he would never be competent. I'm sorry, maybe I'm just misinterpreting the question. No, I think you've got it. Because obviously what we want to do is not incentivize a suggestion that mental incompetence would be a complete defense to removal. That doesn't happen in the criminal context. That doesn't happen in other scenarios. So assuming that we are trying to apply the MAM prong to, how do we appropriately cabin to address the issue of incompetence, which can vary by person by day? Understood. I don't think that mental incompetence is a complete bar to removal. And I think that what the court could do is look at the extent of the mental incompetence. In this case, Mr. Reed's incompetency was not only proven by unrebutted expert testimony, but that testimony showed that he was not able to communicate with or assist his counsel at all, Your Honors. And I'm very sympathetic to the argument that the safeguards weren't followed. What I want to know is how we address the fact that competency will vary, and what kind of safeguards do we need when somebody might be competent on one day and incompetent on another? Is it static? How do we fashion a rule that makes sure people's rights are, in fact, safeguarded when it varies? Understood. I think an excellent example of one safeguard that might apply would be something like a continuance. So as Your Honor is saying, there are instances where competency can change over time. You've indicated in your brief that this has been going on for 25 years. Is a continuance what you really want? In our case, Your Honor, no. You're asking, you want us to remand with instructions determining. That's correct, Your Honor. Why should we do that? You should do that for a few reasons. First is that Mr. Reed's incompetency was shown by unrebutted expert evidence, because that same expert evidence showed that Mr. Reed is not going to become competent in the future, because the government is not disputing that Mr. Reed's incompetence resulted in the statutory and regulatory and constitutional violations that we've set forth. His terminations are without prejudice, as I understand it? That's correct, Your Honor. I'm not really sure what that means. Does that mean that if at some point the government thinks he's become competent, they could reopen the proceedings? That's correct, Your Honor. When termination is without prejudice, if the government wants to reassert the charges at a later time, if they believe that the respondents become competent, they can do that. So does that answer my question about the variability of a person's mental health on a particular day?  In instances where someone's mental health might be restored, the government could reassert charges in the future. I think it's really important in this case, Your Honors, to recognize that there's not really a significant dispute from the government as to the violations of the regulations that we've set forth in our briefs. I think the only argument that they're making is that there hasn't been a sufficient showing of prejudice. And it's really important on that point to look to Waldron and Montia, this Court's two decisions, that deal with prejudice in the context of regulatory violations. And both of those cases very clearly say that when there's regulatory violations at issue, a showing of prejudice just isn't required. And so coming out of the briefs, we don't have a response regarding Waldron and Montia. But let me ask you something else. One of the green briefs refers to the matter of Castro-Tum, which was an attorney general decision back in 2018. As I understand it, that decision has now been overruled by a later attorney general decision from 2021, the matter of Cruz-Valdez. But no one briefed it. No one gave us a 28-J letter. I'm just, are you aware of it? Does it impact this case? I am aware of it. I don't think it impacts this case, and certainly not significantly. And the reason for that is that the government never asserted that matter of Castro-Tum foreclosed termination in this case. So we don't really think it's an issue. Was Castro-Tum lurking in the background when these proceedings were going on? It was pending, right?  19 and 20, Your Honor. So the case was there. That's correct. Castro-Tum was, it hadn't been reversed yet, I think, during the pendency of the appeal process. So isn't that the existence of Castro-Tum the reason why the IJs were unsure that they could use administrative termination? I don't think that's accurate, Your Honor. It may have been a little bit unclear due to the matter of Castro-Tum, but there are other authorities that we've pointed to from the BIA and elsewhere indicating that the termination is an appropriate remedy that can be used by the immigration judges. So you don't think that your client's position is any stronger with the over the replication? It may be somewhat stronger, Your Honor. I frankly don't think Castro-Tum is really an issue in this case because the government never asserted that it foreclosed termination. That was never a position that was taken. So the point is well taken that it doesn't foreclose termination, but I also don't think that that was raised in this case and it doesn't really matter. So is it a fallback position of yours that we should simply remand without establishing a standard for our court? But remand on the basis that the BIA did not conform to the BIA's own precedence in dealing with this question of explaining how the incompetence in the appointment of counsel reflects on the case? That is an alternative position, Your Honor. We don't think that that is necessary and that what the court should do is simply remand with instructions to terminate the proceedings. However, to the extent the court determines that that's not the appropriate remedy or that the court is unwilling to make that determination, then that's correct. That is an alternative position. Thank you. We'll see from you again. Thank you, Your Honors. Good morning. May it please the court. Paul Fiorino for the Attorney General. So does the government agree that immigration judges have the authority to terminate or administratively close a removal proceeding involving a mentally incompetent non-citizen when the circumstances warrant? When circumstances warrant is the key. Yes, they do. The answer is yes. Yes, and Castro Tomb and Cruz Valdez really don't have any application here. It was completely available to the IJ at the time. Notwithstanding Castro Tomb, the IJs could still terminate? I believe so because of the mental issues were relevant. If you were to conclude that the IJ did not believe that was available to them, you would agree that that's something we could remand to consider? No, I don't think that this case is one that would require remand. And Judge Perez, you asked a question, you know, what avenues are there to accommodate a varying mental state and whether termination would be temporary or permanent. The important thing to remember about this case is, well, first of all, we don't concede that the immigration judge or the BIA did not follow safeguards. We do not concede that. You have to concede that they didn't make a complete or a formal competency finding, right? I mean, you said it in your brief. Well, here's what we do say. Under matter of MAM, the decision says that if there are indicia of incompetency, the immigration judge must make further inquiry to determine whether the alien is competent. If the alien lacks sufficient competency, the immigration judge will evaluate and apply appropriate safeguards. And the immigration judge must articulate the rationale for his or her decision. And that is exactly what happened here per MAM. How could they have done that? How could the judge have done that if the judge failed to actually make a complete or formal competency hearing? Like, I mean, that's part of the challenge that I'm having, which is there were some safeguards, but if you didn't make a formal finding as to competency, how could you make sure that the safeguards at issue were actually fixing the problem that the person in front of them was having? Well, the IJ did make a finding on competency. The IJ said, I find that this petitioner or this respondent, they called him, has trouble communicating with his attorney. But the IJ also said, I'm not making a formal competency hearing. And I see in your reply brief, you know, the IJ did not make a formal competency finding. Okay, but he put the safeguards in place, and we think that is enough. Right, but that's the problem, right? If you don't know what is the person's issue, how can you be sure that the safeguards that you have are actually married to addressing that issue? Take a look at what happened in this case. What are the two avenues available to Mr. Reed? It would be termination or 212C, waiver of inadmissibility, and CAD deferral. The question is, this is a due process question. Did he have notice and an opportunity to respond? Did he have a fundamentally fair chance to put forth all the evidence necessary for those two? If the finding was that he could not communicate with counsel, how is providing him with counsel a reasonable safeguard? Because he was communicating with his social worker, Ms. Donovan, and he was also communicating with Dr. Kort. They were able to put forth. Right, but didn't the doctor say that he couldn't effectively communicate with his counsel? Right, but the question is just, is communicating with counsel isn't the end all and be all. The question is, for fundamental fairness and due process, was he able to have a fair hearing and get all his evidence in? At the end of the day, what we have is a series of criminal convictions that the immigration judge didn't. How is he able to get all this evidence in if he's not able to communicate with counsel? Because he told his social worker, he told his psychiatrist, and the attorney talked to them. The attorney got that evidence. The attorney talked or communicated that with the court. All the evidence he had available to him got before the IJ. If you're looking for a case to establish a new rule, this isn't the case to do that, because he was able to marshal all the evidence necessary for the immigration judge to make a discretionary finding. You're not conceding, are you? Supposing we have a case in which a person is found to be permanently unable to communicate with counsel. There's no reasonable likelihood of that ever changing. You're not conceding, are you, that the United States would be powerless to remove- Not at all. Such a person? Not at all. I mean, even though he's unable to communicate with counsel, that is definitely a deficit and a problem, but it doesn't guarantee one immunity from removal. Exactly, it doesn't. But in this case, again, this is not the case. He's not in a persistent vegetative state. In this case, at the end of the day, the issue is, did he have enough opportunity to put forth his equities for the immigration judge to make the discretionary decision? Remember, this entire 212C denial is a matter of discretion. We're not looking at statutory qualifications, and for that reason, the 20HA letter- I'll get back to your prejudice argument. The part that I'm struggling with is that I think we agree that there are certain procedural safeguards, and I think you're not disputing that a person is entitled to them. And at a very threshold issue, if they didn't make a competency finding, then how can we be sure that the safeguards that did exist actually addressed the competency? Because you look to the evidence that the petitioner put forward, and you ask yourself, is there anything else that he could have, that additional safeguards could have provided, that would have enabled him to put forth more evidence that could have tipped the scales in favor of the immigration judge giving him a favorable discretionary decision? As Judge Chin asked, why remand this case? If we remand this case, how are things going to be different? What new evidence would be put in there? I'm not sure I asked that question, but- I'm sorry. Well, that's how I- Well, I think one possible safeguard would have been a continuance. Okay. But would it have resulted in any more evidence if he were to get better, for example? No, it wouldn't. I don't think so. The psychiatrist also testified that she did not think he would ever be able to communicate with counsel. I mean, that sort of supports the argument for termination as well. I mean, it cuts both ways. Well, the question to ask is this. What were the factors that the immigration judge made in his unreviewable discretionary decision? Part of the problem is when the immigration judge says, I'm not going to make formal findings as to overall competence. We don't know if the result might have been different if there were a complete competency determinant. Well, I don't know- The reason wasn't articulated, right? So Mr. Reid was entitled to two different kinds of procedural protections, one, the formal hearing, and then two, the articulation. And if neither of them happened, how do we know that not wearing the robe or any of that act or any of the other efforts that the IJ did make were sufficient to address it? Go ahead. We do not agree that the immigration judge did not articulate. The immigration judge did articulate. If you read, she said, I have concerns that he can't talk to his attorney. That is articulation. She did that. And the question is, what does a formal hearing look like? What would it be? Well, the fact that she said it, right? Even if you and I were to disagree, the fact that she said, I am not doing it. Well, that's really, I mean, I think that's really putting form over substance, to be perfectly honest. The fact that she didn't make the talismanic incantation of saying this is a- No, she probably said she didn't, right? I mean, that's different. I agree not dealing with the magic words would not be constructive or helpful, but when the person says, I did not. But what did she say? She said, I have credited the testimony of Dr. Court. I've credited the testimony of Mrs. Donovan. I've credited all of the other evidence. I have concerns that he can't speak with his attorney. They say that he is schizophrenic. They say that he is paranoid. They say, and I believe all this. So how about you tell me, how is not wearing a robe going to address the not being able to connect with your lawyer? I don't know. You'd have to ask Mr. Reed that, because that's what he asked for. Well, but that's also circular, right? Because the lawyer that he doesn't trust. Somehow, I don't know if he asked. Obviously, he didn't personally talk to the judge, but it was a request that was made through either his attorney or through his social worker. It got communicated. See, that's a perfect example. He was able to get his message through to the court about what his situation was. No, I actually think it cuts the other way. How do we trust the lawyer that Mr. Reed could not connect with to say that that was going to fix the problem, right? I mean, if he does not have a relationship with his lawyer, his lawyer cannot advocate him, then how do we trust any of what the lawyer advocated as actually furthering his interests? Well, and I don't mean to be circular or to evade your question, Your Honor. I really need to emphasize at the end of the day what sunk his ship. It was his criminal convictions. Those were the overwhelming negative equities that prevented him from getting 212C relief. Okay, but that's back to the prejudice, right? And so you're asking us to step over the threshold issue of competency. I mean, that's fine that you're asking us to do that, but I just want to be clear. You are on the prejudice part, and we're trying to deal with the procedural rights to protect the fundamental right. Yes, we say – if I can succinctly – I see that I'm over time. Substantively and for all intents and purposes, he was given the proper safeguards that MAM requires. There may not have been the formal competency hearing, but all the evidence was considered as to his competency. So we're not taking the position and we're not conceding that the BIA violated its own procedures or that the BIA violated any regulation. Given that, yes, the court does have to look at prejudice. And at the end of the day, none of all of what we're talking about is going to change the simple fact that he has three criminal convictions that span a number of years involving stolen firearms and the possession of narcotics. That's not going to change. So there's really no point in remanding in this case. And furthermore, this case is not a vehicle for the court to craft a new rule, as Judge Perez suggested. Thank you. Thank you very much. No further questions. We'll rest. Mr. Bourbon, you have two minutes. Thank you, Your Honors. I think the key point coming out of opposing counsel's remarks comes from your question, Judge Perez, is that they're focused on prejudice, but they're not really addressing the issue of whether termination is in some circumstances required. And frankly, I think that the government's conceded that point. I want to address in particular the Judge LaValle's question about where someone can't communicate with counsel permanently and what happens in that case. And frankly, we think that this is that case. I point the court to page 359 of the record in which Dr. Court, the psychologist, was asked if Mr. Reed would ever be able to consult with his counsel, and she said no, and the government did not have a responsive expert on that point. And, you know, so the record is pretty clear on that issue. The other point that I want to address is the argument that opposing counsel made that you have to look at what additional evidence would have been put into the record. So I think this is kind of, as the court, I think, noticed, trying to impose a prejudice test, which, as we've explained, we don't think is appropriate here under the precedence that we've cited. But it also doesn't really make sense, even if the law were otherwise unclear. This is a situation where you have a mentally incompetent respondent, and asking what evidence would have been put in requires you to speculate about what an incompetent person would have been able to tell their attorney if they were competent. And that just doesn't make any sense, Your Honors. The final point that I would make is that if the court is considering remand, to look to its decision in Eusebio Gomez v. Gonzalez, in which there was a limited remand, certifying the question to the Board of Immigration Appeals for a limited purpose. We'll take it under advisory. Thank you.